UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

HENRY WESTON,

           Plaintiff,

      v.                                  Case No. 25-cv-1089-bhl

RANDALL HEPP,
PAMELA JOHNSON,
JEREMY STANIEC,
SCOTT KINNARD, and
JODI FIELDS,

           Defendants.

---

## SCREENING ORDER

---

      Plaintiff Henry Weston, who is currently serving a state prison sentence at the Kettle Moraine Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated while he was incarcerated at the Waupun Correctional Institution. This matter comes before the Court on Weston's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

      Weston has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Weston has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and has been assessed and paid an

initial partial filing fee of $6.20.  Weston's motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. §1915A(b).  In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted.  To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2).  It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

Weston alleges that, on June 25, 2022, he submitted an information request informing his medical provider that his degenerative disc disease was starting to impact him mentally and emotionally and making it difficult for him to concentrate, sleep, or even stand up straight. He further stated that the medication he was taking was no longer effective. A couple days later, Defendant Jodi Fields responded and instructed him to use the proper form to raise his concerns with the psychological services unit. She also informed him that an appointment would be scheduled with his provider in the next few weeks. Finally, she noted that Tylenol and ibuprofen could be purchased through the canteen. Weston explains that he wrote back to Fields and stated he needed medical attention now, not in a few weeks. A nurse responded a few days later that his request had been forwarded to his provider. Weston continued to interact with different people in the health services unit about scheduling an appointment with his provider, and he eventually filed an inmate complaint about the delay. Weston states that he was finally seen by his provider on July 27, 2022, about a month after he first requested to be seen.

About eight months later, on March 30, 2023, Warden Randell Hepp issued a memorandum explaining that movement in the prison would be restricted to ensure the safety of the prisoners and staff. He allegedly explained that, while a significant portion of the population acts appropriately, many refuse to cooperate with basic expectations for practices such as count, movement, and showers. Warden Hepp allegedly represented that the restrictions on movement would end once the majority of the population demonstrates a cooperative spirit. According to

Weston, inmates never received an "effective notice" of suspension of administrative rules as required by the Wisconsin Statutes.

Weston asserts that, on June 3, 2023, he wrote to Pamela Johnson, the deputy warden for security, and asked why he was being denied the opportunity for recreation. He stated that he had not received any conduct reports that would restrict him from recreation. He noted that he had not had recreation for eight weeks. He also noted that he had been diagnosed with degenerative disc disease and needed to exercise. Johnson responded two days later and informed Weston that conduct reports were issued at staff's discretion. She also noted that Weston had been documented as repeatedly failing to stand for count and covering his cell front. She stated that his non-compliance was a contributing factor to his recreation situation. She suggested that he stand for every count and keep his cell front clear.

Beginning in June 2023 and continuing through October 2023, Weston allegedly wrote to Warden Hepp, Deputy Warden Johnson, Defendant Jeremy Staniec, and Defendant Scott Kinnard complaining that he was being denied out-of-cell recreation even though he had not received any conduct reports. They all responded that staff had logged Weston as refusing to stand for count and/or covering his cell front more than two times during the week. They also informed him that if he stood for count and did not cover his cell front, he would be allowed to leave his cell for recreation along with the rest of his unit. Weston asserts that he then submitted a health services request and was informed that the consequences of the lockdown were a security matter, not a medical matter. He was allegedly provided with exercises to do in his cell.

According to Weston, he "stands for count and do[es] not cover his cell front, light fixture at all, does not cover or hang anything from the cell windows, cell-bars, end of the bed, side of the bed, or vents." Dkt. No. 1 at 13. He states that staff was "mislogging while doing count" and that

4

he "does follow these rules." *Id.* Weston also informed them that he had degenerative disc disease and that the lack of exercise was causing him both physical and mental harm. Staniec allegedly informed Weston that he would have to get a medical restriction from the health services unit. Weston alleges that, in total, he was denied out-of-cell recreation for seven to eight months despite never receiving a conduct report for violating a disciplinary rule.

## THE COURT'S ANALYSIS

Weston asserts that Defendants violated his Eighth and Fourteenth Amendment rights when they denied him out-of-cell recreation for up to eight months despite him never receiving a conduct report for misconduct. "An Eighth Amendment claim has two components—objective and subjective. To satisfy the objective component, the deprivation alleged must be, objectively, sufficiently serious." *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001). "The subjective component relates to a defendant's state of mind and requires a showing of deliberate indifference. At a minimum, . . . an inmate must allege *actual* knowledge of impending harm *easily* preventable." *Id.* (emphasis in original). Decades ago, the Seventh Circuit held that an extended denial of out-of-cell exercise privileges without a legitimate penological need may violate the Eighth Amendment. *See id.* at 684 (explaining that denying out-of-cell exercise privileges for inmates who have "serious violations" of prison disciplinary rules or who pose a threat of escape does not violate the Eight Amendment). Accordingly, Weston may proceed on a deliberate indifference claim against Warden Hepp, Deputy Warden Johnson, Staniec, and Kinnard based on allegations that they persistently refused him out-of-cell recreation for an extended period of time when he had not committed any serious violations.

Also, "[o]pinions from the Supreme Court and [the appellate court] spell out that inmates must be afforded some degree of process before they are subjected to an atypical and significant

5

hardship . . . in relation to the ordinary incidents of prison life." *James v. Pfister*, 708 F. App'x 876, 879 (7th Cir. 2017). At least at this stage, the Court can reasonably infer that being denied the opportunity for out-of-cell recreation for eight months may constitute a deprivation of liberty sufficient to require constitutionally minimal process, to include notice of the reasons for the denial and an opportunity for Weston to present his views to an impartial decision maker. *Id.*; *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024). According to Weston, he received no formal notice of the charges of misconduct (such as in a conduct report), no opportunity to present his views on the charges (such as an opportunity to submit a written response), and no decision maker reviewed the charges in light of his response. Weston's allegations of a lack of a review are troubling given his insistence that, contrary to the staff logs, he stood for every count and never covered his cell front. Further development of the record may prove otherwise, but at this point, Weston's allegations are sufficient to state a Fourteenth Amendment due process claim against Warden Hepp, Deputy Warden Johnson, Staniec, and Kinnard.

Weston does not, however, state a claim against Fields. Weston explains that he was informed by another medical provider that the decision of whether to grant out-of-cell recreation during the lockdown was a security decision, not a health services decision. He also explains that he was provided with exercises to perform in his cell to help alleviate his back pain, which does not suggest that medical staff was deliberately indifferent to his pain. Further, Fields knew that Weston was under the care of a provider, who he had recently seen for adjustments to his pain medication. More importantly, the Court cannot reasonably infer that Fields, who was a medical provider, had the authority to overrule security decisions made by corrections staff. As the Seventh Circuit has explained, "failure to tell the [security] staff how to do its job cannot be called deliberate indifference; it is just a form of failing to supply a gratuitous rescue service." *Burks v.*

*Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) (holding that "public employees are responsible for their own misdeeds but not for anyone else's"). Finally, any claims related to the medical care he received for his back pain prior to the denial of out-of-cell recreation are not properly joined in this action and may be pursued in a separate case. *See* Fed. R. Civ. P. 18, 20.

Nor does Weston state a claim based on allegations that Warden Hepp failed to comply with Wisconsin statutes regarding providing "effective notice" of the suspension of the administrative rules. The Seventh Circuit has repeatedly held that "§1983 protects plaintiffs from constitutional violations, not violations of state laws." *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003).

**IT IS THEREFORE ORDERED** that Weston's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Weston fails to state a claim against Jodi Fields, so the clerk's office is directed to terminate her from this action.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Weston's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Randall Hepp, Pamela Johnson, Jeremy Staniec, and Scott Kinnard.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Randall Hepp, Pamela Johnson, Jeremy Staniec, and Scott Kinnard shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Weston is located.

**IT IS FURTHER ORDERED** that the agency having custody of Weston shall collect from his institution trust account the $343.80 balance of the filing fee by collecting monthly payments from Weston's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Weston is transferred to another institution, the transferring institution shall forward a copy of this Order along with Weston's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Weston is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Weston may find useful in prosecuting this case.

Dated at Milwaukee, Wisconsin on September 2, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

9

Case 2:25-cv-01089-BHL   Filed 09/02/25   Page 9 of 9   Document 7