UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

HENRY WESTON,

Plaintiff,

v. Case No. 25-cv-1089-bhl

RANDALL HEPP et al.,

Defendants.

---

**DECISION AND ORDER**

---

Plaintiff Henry Weston, who is incarcerated at the Kettle Moraine Correctional Institution, is representing himself in this 42 U.S.C. §1983 action and proceeding on claims in connection with the repeated denials of out-of-cell recreation time. On June 2, 2026, Defendants filed a motion for summary judgment. Dkt. No. 22. For the reasons explained below, the Court will grant the motion and dismiss this case.

**BACKGROUND**

At the relevant time, Weston was an inmate at the Waupun Correctional Institution. Defendants Randall Hepp, Scott Kinard, Pamela Johnson, and Jeremy Staniec all worked at Waupun: Hepp as the warden, Kinard and Staniec as security supervisors, and Johnson as the warden secretary. According to Hepp, in early 2023, Waupun experienced an increase in disorder and defiance throughout the prison population. Inmates disobeyed and disrespected staff, engaged in improper movement and/or loitering, and were violent towards each other and staff. In response, Hepp restricted some operations and activities to create a plan to restore order and safety for both the inmates and staff. Dkt. Nos. 24, 45 at ¶¶1-9. More specifically, Hepp issued a series of memos identifying and explaining sets of restrictions that were being implemented in an effort to improve order and inmate compliance.

On March 30, 2023, Hepp issued a memo explaining the new restrictions on movement and activities and why the restrictions were necessary. The memo noted that, as inmates began to

show compliance, opportunities for recreation, passes, education, and work privileges would be restored.

On April 18, 2023, Hepp issued a second memo further explaining the expectations surrounding the daily practices of standing counts and cell front checks. Standing counts occur four times a day, with each inmate expected to stand with their cell light on. At all times, cell fronts and bed frames were to be free of any item, including blankets, clothing, and paper. Privacy curtains were for toilet use only. The inmates were informed that compliance with these expectations would increase their opportunity to resume ordinary movement. They were also informed that compliance would result in the opportunity to participate in leisure activities, while noncompliance would impact an inmate's opportunity to participate. Dkt. Nos. 24, 45 at ¶¶10-19.

On April 25, 2023, Hepp issued a memo to prison staff explaining the new method for tracking inmates' compliance with the requirements to stand for count and keep their cell fronts clear. A "compliance tracking log" was created for officers to document which inmates stood during the four standing counts and had clear cell fronts during two random checks. The logs took effect in May 2023. To incentivize compliance, an inmate's opportunity to participate in recreation was contingent on whether he stood for count and kept his cell front clear. If an inmate complied, he would get recreation, but if he did not comply more than two times in a one-week period, he would lose his recreation time for the following week. Eligibility for recreation restarted every week, so if an inmate did not comply one week, he would lose recreation for the next week, but if he complied during the next week, he would get recreation the week after. Dkt. Nos. 24, 45 at ¶¶20-34, 37, 42.

According to the compliance logs, Weston was not compliant and therefore deemed eligible for recreation until the week of October 1-7, 2023. His compliance thereafter was mixed. Defendants assert that Weston became periodically eligible for recreation when he was compliant during the preceding week. The logs indicate that Weston was noncompliant and therefore not eligible for recreation for 46 of the 54 recorded weeks. The logs also indicate that by May 2024, Weston's compliance had improved and he had a nearly perfect compliance record.

Weston disputes the accuracy of the logs, asserting that he stood for every count and always had his cell front clear. He states that unidentified staff did not accurately record inmates' compliance. It is undisputed that none of the Defendants was responsible for tracking inmates' compliance with the standing count or cell front requirements. Dkt. Nos. 24, 45 at ¶¶43-47, 64.

On September 1, 2023, Weston submitted information requests to Staniec and Kinnard complaining that he had been denied recreation even though he had not received a conduct report. Staniec responded a few days later, informing Weston that he had been noncompliant five times during the prior week. He advised Weston that if he stood for count and kept his cell front clear, he would be eligible for recreation. Similarly, Kinnard confirmed that Weston had more than two violations during the prior week. There is no evidence that Weston challenged Staniec or Kinnard's characterization of his noncompliance. Dkt. Nos. 24, 45 at ¶¶48-54.

On September 2, 2023, Weston wrote to Hepp and Johnson about being deprived recreation time despite not having received a conduct report. Johnson responded and directed him to contact a correctional officer, cell hall sergeant, or cell hall supervisor. Weston again wrote to Staniec a few days later, explaining he had a medical condition "that causes [him] problems at time[s] with standing." He stated that he "can only do what [his] medical condition allows [him] to do" and that he "stand[s] for count as [his] condition allows for [him] to." Staniec informed Weston that he would have to get a medical restriction from the health services unit. Dkt. Nos. 24, 45 at ¶¶55-59; Dkt. No. 26-1 at 24.

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Weston first asserts that Defendants violated the Eighth Amendment when they enforced policies that resulted in him being denied out-of-cell recreation time for many months. Although exercise is recognized as a necessary requirement for physical and mental well-being, denying an inmate the opportunity for out-of-cell recreation is permitted as a consequence for misconduct. Indeed, the Seventh Circuit has held that a 90-day period denial of yard privileges as a sanction for misconduct does not inflict cruel and unusual punishment on an inmate. *See Pearson v. Ramos*, 237 F.3d 881, 884 (7th Cir. 2001).

Weston asserts that he was denied recreation for much longer than 90 days, but Defendants' evidence shows that he was denied recreation for a longer period not because of a single sanction but due to *many* stacked sanctions. The Seventh Circuit has confirmed that imposing consecutive sanctions for separate violations does not violate the Eighth Amendment because "it is wrong to treat stacked sanctions as a single sanction"; to do so would produce the "ridiculous consequence of enabling a prisoner, simply by recidivating, to generate a colorable Eighth Amendment claim." *Id.* at 886. Defendants explain that Weston's recreation eligibility reset every week, meaning that, in any given week, if he chose to comply with the straightforward requirements to stand during count and to keep his cell front clear, he would be eligible for recreation. According to the logs, week after week, Weston declined to do so, and so he lost his recreation privileges for the following week. Depriving an inmate of recreation for one week as a sanction for failing to follow the rules does not violate the Constitution. The fact that Weston was sanctioned week after week because of his persistent refusal to follow the rules for many consecutive weeks does not impact that analysis. *See Tims v. Hepp*, No. 24-cv-1285, 2026 WL 63429 (E.D. Wis. Jan. 8, 2026).

Weston disputes the accuracy of the logs and asserts that he stood for *every* count and *never* had his cell front covered. But even if a jury were to credit Weston's assertions, Defendants would be entitled to summary judgment. A defendant is liable for damages under §1983 only if he was personally responsible for the deprivation of a constitutional right, meaning that the deprivation occurred at the defendant's behest or with her knowledge and consent. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019). Weston offers no evidence from which a jury could reasonably conclude that Defendants knew that staff members were incorrectly recording inmates' compliance. In Weston's communications with Defendants, Weston never suggested that the logs were inaccurate. Indeed, contrary to his current position, he appeared to concede that he did *not*

always stand for count, informing Staniec that he "can only do what [his] medical condition allows [him] to do" and that he "stand[s] for count as [his] condition allows for [him] to." Dkt. No. 26-1 at 24. The undisputed record shows that Defendants merely enforced the relevant policies, which, as noted above, did not violate the Eighth Amendment.

Weston also argues that it was unreasonable to sanction inmates for failing to stand during count or for having items on their cell front. He points out that these rules had been in place for many years and that, prior to 2023, violations had never resulted in the loss of recreation. But Weston ignores the changes in circumstances highlighted by Defendants. Defendants explain that, due to an increase in disorder and defiance throughout the prison population, Hepp instituted a "lockdown" to restrict movement and reestablish expectations for inmate counts and everyday activities. One goal of the lockdown was to restore discipline and order at the institution for the safety of both the inmates and staff. As the Supreme Court acknowledged long ago, "[p]rison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel . . . . Accordingly, we have held that even when an institutional restriction infringes a specific constitutional guarantee . . . the practice must be evaluated in light of the central objective of prison administration, safeguarding institutional security." *Bell v. Wolfish*, 441 U.S. 520, 457 (1979). This is because "the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 547–48.

Defendants were faced with having to navigate a difficult set of circumstances; namely, the increase in disorder and defiance throughout the inmate population. Weston offers no evidence to dispute Defendants' explanation that the enforcement of the standing count and cell front requirements was essential to the reestablishment of discipline and order within the institution. Accordingly, no jury could reasonably conclude that Defendants were deliberately indifferent to the risk of harm Weston may have faced from Defendants' shift to the strict enforcement of those policies.

Finally, Weston asserts that Defendants violated the Fourteenth Amendment when they sanctioned him without due process. To state a due process claim, an inmate must demonstrate (1) a constitutionally protected liberty interest and (2) deficient procedures attendant to the

deprivation of that interest. *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024). Weston fails to state a claim because he does not have a constitutionally protected liberty interest in one week of recreation time. Indeed, under Seventh Circuit precedent, standing alone, a stay in segregation for less than six months "is not enough to implicate a liberty interest that triggers due process rights." *Id*. Given that the conditions in segregation are significantly harsher than the deprivation of recreation for a single week, Weston fails to establish that he had a constitutionally protected liberty interest. *See also Delaney v. DeTella*, 256 F.3d 679, 683–84 (7th Cir. 2001) ("short-term denials of exercise may be inevitable in the prison context and are not so detrimental as to constitute a constitutional deprivation"). Because Weston was not deprived a liberty interest, whether there were adequate procedures attendant to the deprivation is irrelevant. Defendants are entitled to summary judgment.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' summary judgment motion (Dkt. No. 22) is **GRANTED** and this case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on August 20, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.